FILED

NOV 13 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-12-1160-PaMkH |
| KENNETH BRUCE TISHGART and LORI ANNE TISHGART, | Bankr. No. 09-13400 |
| Debtors. | Adv. Proc. 10-1087 |
| KENNETH BRUCE TISHGART; LORI ANNE TISHGART, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| TIMOTHY W. HOFFMAN, Trustee, | |
| Appellee. | |

Argued and Submitted on October 18, 2012,
at San Francisco, California

Filed - November 13, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

Appearances:    Appellant Kenneth Bruce Tishgart argued pro se;
Katherine D. Ray of Goldberg, Stinnett, Davis &
Linchey argued for appellee Timothy W. Hoffman,
Trustee.

Before: PAPPAS, MARKELL and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellants Kenneth Bruce Tishgart ("Tishgart") and Lori Anne Tishgart (together, "Debtors") appeal the bankruptcy court's judgment awarding appellee, chapter 7[2] trustee Timothy W. Hoffman ("Trustee"), $69,837.90, representing the bankruptcy estate's interest in certain contingent fees received by Tishgart from his legal practice. We AFFIRM.

## FACTS

Debtors filed a chapter 7 petition on October 15, 2009. At the time, Tishgart was an attorney with a solo practice specializing in personal injury claims. Tishgart's practice consisted primarily of representing plaintiffs in personal injury cases, and he ordinarily entered into contingent fee agreements with his clients. At the time of filing the bankruptcy petition, Tishgart was representing over sixty clients for whom he had provided legal services and for which Tishgart had not been paid in full. Debtors did not list Tishgart's interest in these fees in their bankruptcy schedules.

Trustee commenced an adversary proceeding against Debtors on July 27, 2010. In his complaint, Trustee sought a declaratory judgment determining the extent of the bankruptcy estate's interest under § 541(a) in the contingent fees collected by Tishgart after the bankruptcy filing for those cases undertaken by Tishgart prepetition. He also sought turnover of the estate's interest in those fees under § 542(a).

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

-2-

On October 7, 2011, Trustee propounded 101 Requests for Admission ("RFA") to Debtors.[3] The RFAs identified fifteen personal injury cases in which fees were allegedly paid to Tishgart within ninety days after the petition date (the "Fifteen Cases"). These RFAs sought Debtors' admission that Tishgart had "provided little or no legal services" in the Fifteen Cases after the petition date. Debtors' responses to the RFAs were due on November 9, 2011. Debtors did not respond to the RFAs by the deadline, nor did they seek an extension of time to do so and, as a result, under Civil Rule 36(a)(3)/Rule 7036, the RFAs were deemed admitted.

On November 18, 2011, Trustee filed a motion for summary judgment based on the deemed admissions, requesting that all fees paid to Tishgart related to the Fifteen Cases be turned over to Trustee. A hearing on the summary judgment motion occurred on December 23, 2011. The bankruptcy court granted the motion, but only in part, awarding $3,600 paid to Tishgart in one case involving Pedrou Ferrer ("Ferrer") to Trustee. The court's order noted that the motion had been granted based on the deemed admissions, and for the reasons stated on the record. There is no transcript of this hearing in the excerpts of record or in the bankruptcy court's docket.

Debtors then filed two Motions for Relief from Late Response to Discovery. In a December 12, 2011 motion, Debtors sought

---

[3] On May 13, 2011, in connection with an earlier discovery dispute wherein Trustee alleged that Debtors were not fully cooperating, the bankruptcy court approved the withdrawal of Debtors' counsel, and awarded sanctions against Debtors of $1,875 under Civil Rule 37(a)(5)(A), applicable in adversary proceedings via Rule 7037.

-3-

relief because their failure to timely deny the RFAs was the result of mistake, inadvertence, or excusable neglect. This motion was not accompanied by a notice of hearing and, because of this, the bankruptcy court denied it by docket entry as an inappropriate ex parte motion.

Debtors refiled the motion on December 30, 2011, accompanied by a notice setting the motion for a hearing on January 27, 2012. However, that date fell after the January 13, 2012, discovery cutoff date, and only about two weeks before the scheduled trial date set by the court. In this motion, Debtors argued that withdrawal of the deemed admissions would allow the parties to address the merits of the action, and that Trustee would not be prejudiced because discovery remained open. Trustee filed a response noting that, contrary to Debtors' argument, the discovery cutoff date had passed, and that he would be prejudiced because the trial was set to begin shortly and his preparation for trial assumed that he could rely upon the deemed admissions. A transcript of the January 27, 2012 hearing on Debtors' motion is not included in the excerpts of record or the bankruptcy court's docket. On February 10, 2012, the bankruptcy court denied Debtors' request "for the reasons stated by the court at the hearing."

The trial took place on February 14, 2012. Trustee was represented by counsel; Tishgart appeared pro se. Tishgart was the only witness. Trustee presented documentary evidence concerning eleven of the Fifteen Cases, and Tishgart was examined about each of them. Tishgart presented no documentary evidence to support his testimony. After closing arguments, the bankruptcy

-4-

1  court took the issues under submission.

2      In a March 6, 2012 Memorandum Decision, the bankruptcy court

3  observed that the dispositive legal issue in the contest concerned

4  the amount of the fees from Tishgart's cases which were property

5  of the bankruptcy estate.  In determining the amount Tishgart

6  should be able to retain from the fees he received after the

7  filing of his petition, the court analogized the facts of the case

8  to a situation where Tishgart's employment had been terminated by

9  the client on the petition date.  The court then analyzed the

10 issues under both Federal and California state law.  The court

11 concluded, in part, that:

> In this case, Tishgart is deemed to have admitted that
> he provided little or no services in the cases at issue
> after bankruptcy.  He has given the court scant basis
> for differentiating between his prepetition and
> postpetition work on the cases, which is the only
> possible basis for avoiding the preclusive effect of
> [In re Jess, 169 F.3d 1204 (9th Cir. 1999), the
> principal federal case].  The court would be justified
> in awarding almost all the fees in question to Hoffman.
> However, in the spirit of fairness the court will not be
> quite so harsh.

18 Memorandum of Decision at 3, March 6, 2012.  The court noted that

19 it had already awarded to Trustee all $3,600 of the fees Tishgart

20 received post-petition in the Ferrer case in the partial summary

21 judgment.  Of the $130,475.80 received by Tishgart in question for

22 the rest of the Fifteen Cases, the court awarded half of that

23 amount to Trustee, and half to Debtors.[4]

24      A judgment against Debtors and in favor of Trustee for

---

26      [4]  The bankruptcy court awarded the entire $14,800 of fees
Tishgart received in the Brown case to Trustee.  However, before
27 entry of judgment, Trustee withdrew his request for turnover of
these fees that had been paid to Tishgart over a year after the
28 petition was filed.

-5-

$69,837.90 plus interest was entered on March 15, 2012.  Debtors timely appealed.

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E).  We have jurisdiction under 28 U.S.C. § 158.

Whether the bankruptcy court abused its discretion in denying Debtors' request to withdraw the deemed admissions.

Whether the bankruptcy court erred in ordering turnover of $69,837.90 of the fees Tishgart received after the petition date to Trustee as property of the estate.

The denial of a motion to withdraw a deemed admission is reviewed for abuse of discretion.  Jules Jordan Video v. 144942 Canada, Inc., 617 F.3d 1146, 1158 (9th Cir. 2012).  In determining whether a bankruptcy court abused its discretion, we review whether the bankruptcy court applied the correct rule of law. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).  We then determine whether the court's application of that rule was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)).

Whether property is included in a bankruptcy estate, and the propriety of the procedures employed for recovering estate property, are questions of law that we review de novo.  White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008).

-6-

**DISCUSSION**

**I.**    **The bankruptcy court did not abuse its discretion in denying Debtors' request to withdraw the deemed admissions**.

Civil Rule 36 governs the use of requests for admission in civil actions. It is applicable in bankruptcy adversary proceedings. Rule 7036. Civil Rule 36 provides in relevant part:

Rule 36. Requests for Admission

(a) Scope and Procedure.

> (1) Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents. . . .
>
> (3) Time to Respond; Effect of Not Responding. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. . . .
>
> (4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter[.]

(b)  Effect of an Admission; Withdrawing or Amending It. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Absent a motion for an extension of time, a party's failure to timely respond to a request for admission within the thirty-day limit established by Civil Rule 36(a)(3) results in the admission

-7-

being conclusively deemed admitted.  <u>Conlon v. United States</u>, 474 F.3d 616, 621 (9th Cir. 2007).  In this appeal, it is not disputed that Trustee properly served the RFAs on Debtors, including  requests specifically addressed to the Fifteen Cases. These RFAs requested that Tishgart admit that he "provided little or no legal services" in each of the Fifteen Cases after the petition date.  Debtors admit that they did not timely respond to any of the Trustee's 101 RFAs within the thirty-day period allowed by the rules.  Thus, under both the rules and case law, that Tishgart provided little or no services post-petition on the Fifteen Cases was deemed conclusively admitted in the adversary proceeding.

Although treating a request for admission that is not timely disputed or contested as a conclusively deemed admission is mandatory, and does not require court action, in the exercise of its discretion, a trial court may allow an admission to be withdrawn, but only under statutorily prescribed rules.  <u>Asea, Inc. v. S. Pac. Transp. Co.</u>, 669 F.2d 1242, 1248 (9th Cir. 1981). Civil Rule 36(b) vests the bankruptcy court with discretion to grant relief from an admission made under Rule 36(a) only when "the presentation of the merits of the action will be subserved," and "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  Civil Rule 36(b); <u>Conlon</u> 474 F.3d at 621; <u>Hadley v. United States</u>, 45 F.3d 1345, 1348 (9th Cir. 1995).  Other circuits agree with the Ninth Circuit that withdrawal of an admission may only be made where both of the conditions of Civil Rule 36(b) are satisfied.

-8-

1  See Carney v. IRS (In re Carney), 258 F.3d 415, 419 (5th Cir.
2  2001) ("[A] deemed admission can only be withdrawn or amended by
3  motion in accordance with Rule 36(b)."); Donovan v. Carls Drug
4  Co., 703 F.2d 650, 652 (2d Cir. 1983) (same).

5      Here, the bankruptcy court considered Debtors' request to
6  withdraw the deemed admissions at the hearing on January 27, 2012,
7  and, following that hearing, denied the request "for the reasons
8  stated by the Court at the hearing."  Debtors did not provide the
9  Panel a transcript of the hearing, nor is it available in the
10 docket of the adversary proceeding.  We have carefully examined
11 the record, both before and after the January 27, 2012, hearing,
12 and no where does the bankruptcy court explain its reasons for
13 denying Debtors' request to withdraw the deemed admissions other
14 than in the order issued as a result of the January 27, 2012
15 hearing.

16     If a bankruptcy court's findings of fact and conclusions of
17 law are made orally on the record, a transcript of those findings
18 is mandatory for the Panel's appellate review.  In re McCarthy,
19 230 B.R. 414, 416 (9th Cir. BAP 1999).  Moreover, where the
20 inadequacy of the record provided to the Panel affords no basis to
21 review the decision of the bankruptcy court, we may summarily
22 affirm the bankruptcy court's ruling.  Ehrenberg v. Cal. State
23 Univ., Fullerton Found. (In re Beachport Entm't), 396 F.3d 1083,
24 1087-88 (9th Cir. 2005);  Morrissey v. Stuteville (In re
25 Morrissey), 349 F.3d 1187, 1189 (9th Cir. 2003)(failure to provide
26 a critical transcript may result in summary affirmance).
27 Rule 8009(b)(5) provides that the appellant's excerpts must
28 include "[t]he opinion, findings of fact, or conclusions of law

-9-

filed or delivered orally by the [bankruptcy] court . . . ."
Rule 8009(b)(9) requires that the excerpts include "[t]he
transcript or portion thereof, if so required by a rule of the
bankruptcy appellate panel." Our rules state that "the excerpts
of record shall include the transcripts necessary for adequate
review in light of the standard of review to be applied to the
issues before the Panel." Ninth Circuit BAP R. 8006-1. The
advisory note to this BAP rule explains, "If findings of fact and
conclusions of law were made orally on the record, a transcript of
those findings is mandatory."

Debtors' failure to provide an adequate record of the reasons
for the bankruptcy court's ruling denying their request to allow
them to withdraw the deemed admissions would likely allow us to
summarily affirm that ruling. However, we are mindful of the
instructions of the Ninth Circuit in <u>Beachport Entm't</u> that we
should not summarily rule without first determining if there are
other grounds in the record for affirming a bankruptcy court's
actions.

In this case, Tishgart submitted a sworn declaration in
support of his request to withdraw the deemed admissions. In that
declaration, Tishgart asserts that he moved his office on
November 2, 2011, and "misplaced" the RFAs. Tishgart fails to
note in that declaration, however, that he sent a letter to
Trustee's counsel on October 26, 2011, that acknowledged receipt
of the RFAs, and indicated that he would "endeavor to respond to
the remaining discovery as soon as practicable." Ray [attorney
for Trustee] Dec. at ¶ 2, January 13, 2012. While Tishgart has
thus admitted to having the RFAs two weeks before the thirty-day

-10-

response deadline, he claims to have misplaced them a week before
the deadline. Tishgart explains that his failure to timely
respond to the requests for admission was the result of
"inadvertence, mistake, or excusable neglect."[5] In his
declaration, Tishgart argues that he was proceeding pro se, did
not practice in federal court, and was unable to hire a bankruptcy
specialist. Tishgart Dec. at ¶¶ 4-5.

Tishgart's explanation in his declaration for Debtors'
failure to timely respond to the RFAs lacks merit. Tishgart is an
attorney who has been involved in a litigation practice. While
this issue arises in the context of a bankruptcy adversary
proceeding applying the federal discovery rules, the Panel is
skeptical that Tishgart was unfamiliar with the consequences of
failure to timely respond to a request for admission under federal
discovery rules. Even if so, Tishgart undoubtedly had the ability
to obtain knowledge of the rules, and to comply with the
procedural and substantive law outside his professional
specialization. Godlove v. Bamberger, Foreman, Oswald, & Hahn,
903 F.2d 1145, 1148 (7th Cir. 1991)("a pro se lawyer is entitled
to no special consideration"); see also Leeds v. Meltz,
898 F.Supp. 146, 149 (E.D.N.Y. 1995), aff'd, 85 F.3d 51 (2d Cir.
1996) (pro se attorney not entitled to the liberality normally
afforded pro se litigants). Therefore, there was considerable

---

[5]  Tishgart apparently confuses the Civil Rule 36(b) grounds
for withdrawal of admissions with those applicable under Civil
Rule 60(b)(1) for relief from a judgment or order. There was no
order entered by which the admissions were deemed admitted; Civil
Rule 36(a) is self-effectuating and a court order is not required.
Thomas v. Bonilla, 2011 WL 4527399 at *1 (E.D. Cal. 2011). Civil
Rule 60(b)(1) is not applicable.

-11-

room for the bankruptcy court to doubt Debtors' allegation that their failure to timely respond to the RFAs was either inadvertent or excusable.

Debtors submitted a Memorandum of Law to the bankruptcy court to support their request for relief from the deemed admissions in which they more directly address the two grounds for granting a request to withdraw an admission under Civil Rule 36(b):

> [A]llowing such withdrawal will allow the presentation of the merits in this matter rather than them being extinguished by responses to requests for admission. . . . Granting this motion will in no way prejudice the requesting party in maintaining its action. It simply must respond to the merits of the case and all available rights and discovery remain open to it.

Trustee's Opposition to Defendants' Motion for Relief also addressed the criteria under Civil Rule 36(b). Trustee noted that Tishgart had a history of resistance to his discovery requests, and had already been sanctioned by the court for his intransigence. Trustee argued that Debtors did not fail to respond due to inadvertence, mistake or excusable neglect — Debtors admitted negligence, and it was not excusable. Tishgart acknowledged that he had the RFAs in his possession and simply misplaced them. Trustee argued that because Tishgart is an attorney, he is presumably knowledgable about the consequences of a failure to meet discovery deadlines, or to properly safeguard documents. Trustee pointed out that Debtors apparently let the response deadline pass before asking for another copy of the RFAs; another three weeks passed before they submitted responses; and Debtors did not request relief from the deemed admissions until some six weeks after the response deadline.

-12-

Trustee also credibly asserted that withdrawal of the deemed admissions would hinder, not promote, presentation of the merits of the case. The bankruptcy court had already entered partial summary judgment in the Ferrer case, based on the deemed admissions, something that Debtors apparently did not challenge at the summary judgment hearing.[6] Withdrawal of the admissions could potentially lead to relitigation of the partial summary judgment decision, unnecessarily delaying the trial.

Further, as the bankruptcy court would later find in the Memorandum, the deemed admissions did not comprehensively settle the merits of the contest. Although they conclusively established that Tishgart provided little or no services on the relevant cases post-petition, the bankruptcy court was still required to determine the value of whatever prepetition and post-petition services Tishgart provided, and whether those few post-petition services might be valued higher than the prepetition services.

As to the prejudice to Trustee, he argued that he had already prevailed in the partial summary judgment order, which was based in part on the deemed admissions, and he would be prejudiced by the possibility of relitigating that order. Further, the period for discovery had ended and Trustee relied on the admissions to eliminate the need for further investigation.

While we do not know the precise reasons for its ruling, given these circumstances, we can comfortably conclude that the

---

[6] Again, we must assume what occurred because we do not have the transcript of the summary judgment hearing. However, Trustee argued in his summary judgment motion that Civil Rule 36 applied, and that Debtors' failure to answer the RFAs resulted in the deemed admissions. Debtors did not respond to the Civil Rule 36 issue in their opposition to summary judgment.

-13-

bankruptcy court did not abuse its discretion in denying Debtors'
request to withdraw the deemed admissions.  Civil Rule 36(b)
provides that the trial court may permit withdrawal only if both
the criteria expressed therein are satisfied, that is, that
withdrawal would promote the presentation of the merits of the
action, and that the court was not persuaded that withdrawal would
prejudice the requesting party in maintaining or defending the
action on the merits.  Conlon, 474 F.3d at 624.

The Ninth Circuit has provided clear directions on the first
prong.  "The first half of the test in Rule 36(b) is satisfied
when upholding the admissions would practically eliminate any
presentation of the merits of the case." Hadley, 45 F.3d at 1348.
Trustee argued, and the bankruptcy court apparently agreed, that
the deemed admissions implicated only the first element in
considering the merits of the case.  The court still had to take
evidence on the specifics of the services and value of the
particular prepetition vs. post-petition services.  Thus,
upholding the deemed admissions would not "practically eliminate"
any presentation on the merits.  The first half of the Civil
Rule 36(b) test is not satisfied.[7]

---

[7] Evaluating the second half of the test is more problematic
in this case.  The bankruptcy court could have considered the
additional burden placed on Trustee by having to relitigate the
partial summary judgment, and that additional discovery may not be
available.  However, Trustee's concern that discovery was no
longer available is less persuasive.  The Ninth Circuit has ruled
that closed discovery does not constitute prejudice, because
discovery can always be reopened by the court.  Conlin, 474 F.3d
at 624.  Based on review of the record before us, we cannot
determine if the second half of the Civil Rule 36(b) test was
satisfied.
Nevertheless, both parts of the test must be satisfied.  By
(continued...)

-14-

1  The bankruptcy court did not abuse its discretion in denying

2  Debtors' request for relief from the deemed admissions.

3  **II.  The bankruptcy court did not err in ordering turnover of**
   **$69,837.90 of Tishgart's fees to Trustee as property of the**
4  **estate.**

5       Debtors' bankruptcy estate came into existence when they

6  filed their chapter 7 petition.  §§ 301, 302.  Notwithstanding

7  certain specified exceptions, the bankruptcy estate includes all

8  legal and equitable interests in property held by Debtors at the

9  time of filing.  § 541(a).  Section 541(a) also specifies that the

10 bankruptcy estate encompasses all "proceeds, product, offspring,

11 rents, or profits of or from property of the estate, except such

12 as are earnings from services performed by an individual debtor

13 after the commencement of the case." § 541(a)(6).

14      Most if not all of the contingent fees received by Tishgart

15 in the Fifteen Cases were received after the filing of the

16 petition.  At least on its surface, then, § 541(a)(6) would seem

17 to exclude from property of the estate contingent fees received

18 post-petition.  However, it has long been established that

19 payments for pre-petition services are not excludable from the

20 estate solely because they were received post-petition and

21 additional services were required to receive payment.  Rau v.

22 Ryerson (In re Ryerson), 739 F.2d 1423, 1425-26 (9th Cir. 1984);

23

24 _____

       [7](...continued)
25 its own later determination that the deemed admissions were only
   one part of the merits analysis, we infer that the bankruptcy
26 court was aware that upholding the admissions would not
   "practically eliminate" any presentation on the merits and, thus,
27 the first part of the Civil Rule 36(b) test was not met.
   Consequently, we conclude that the court did not abuse its
28 discretion in denying the request to withdraw the admissions.

                              -15-

In re Wu, 173 B.R. at 414-15.  The estate is entitled to recover
the portion of post-petition payments attributable to pre-petition
services.  Jess v. Carey (In re Jess), 169 F.3d 1204, 1208 (9th
Cir. 1999).

Debtors argue that the value of Tishgart's prepetition
services on the relevant cases or, in other words, the amount to
be turned over to Trustee, should be measured solely by the total
hours he testified that he worked prepetition on those cases
multiplied by an hourly rate of $102.50.  Debtors seem to argue
that hours spent are fungible assets, where an hour spent
prepetition has the same value as an hour spent later in the case.
This use of an exclusively lodestar approach to valuing Tishgart's
services overlooks an important distinction in bankruptcy law
regarding property of the estate.  Federal law, specifically
§ 541(a), holds that a debtor's bankruptcy estate includes all
legal and equitable interests in property held by the debtor at
the time of filing.  Those interests include contingent fee
payments to a lawyer in bankruptcy and owed on the petition date.
In re Jess, 169 F.3d at 1208.  The Ninth Circuit has held that the
contingent fee is payable to the bankruptcy estate, less the value
of post-petition services necessary to obtaining the payments:

> [A] court must first determine whether any postpetition
> services are necessary to obtaining the payments at
> issue.  If not, the payments are entirely "rooted in the
> pre-bankruptcy past," and the payments will be included
> in the estate.  If some postpetition services are
> necessary, then courts must determine the extent to
> which the payments are attributable to the postpetition
> services and the extent to which the payments are
> attributable to prepetition services.  That portion of
> the payments allocable to postpetition services will not
> be property of the estate.

Id. at 1208.

-16-

In the <u>Jess</u> case, the Ninth Circuit determined that 78 percent of the debtor-attorney's work, based on recorded hours, was performed prepetition, and thus the fees for those services were property of the bankruptcy estate.  <u>Id.</u> at 1206.  The <u>Jess</u> court, however, cautioned that counting the number of hours expended by the debtor prepetition and post-petition was not necessarily the correct procedure for determining the relative value of pre- and post-petition services:

> We should note that Jess made no attempt in the bankruptcy court to place a greater value on his post-petition hours than on his pre-petition hours. Thus, all of Jess's hours were valued equally.  We recognize that in a different context it might be possible to establish that hours worked at different stages of a case may have different values.

<u>Id.</u> at 1208 n.4.

This led the bankruptcy court to the other side of the property of the estate coin.  While Federal law determines what interests or assets of the debtor at the time of filing a bankruptcy petition become property of the estate, it does not settle questions of the existence and scope of the debtor's interest in a given asset.  We resolve those questions by reference to state law.  <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

The bankruptcy court properly consulted California state law to determine the value of attorney services on a contingent basis where the attorney was terminated before payment was received.  A

-17-

recent decision of the California Court of Appeals, not cited by

the bankruptcy court, provides insight into quantum meruit

determinations in contingent fee cases under California law.

> [A] contingency fee lawyer discharged prior to
> settlement may recover in quantum meruit for the
> reasonable value of services rendered up to the time of
> discharge. . . . The most useful starting point for
> determining the amount of a reasonable fee is the number
> of hours reasonably expended on the litigation
> multiplied by a reasonable hourly rate. This
> calculation provides an objective basis on which to make
> an <u>initial estimate</u> of the value of a lawyer's services.
> . . . However, providing evidence as to the number of
> hours worked and rates claimed is not the end of the
> analysis in such a quantum meruit action. The party
> seeking fees must also show the total fees incurred were
> reasonable. Factors relevant to that determination
> include "[t]he nature of the litigation, its difficulty,
> the amount involved, the skill required in its handling,
> the skill employed, the attention given, <u>the success or
> failure of the attorney's efforts</u>, the attorney's skill
> and learning, including his [or her] age and experience
> in the particular type of work demanded."

<u>Mardirossian & Associates, Inc. v. Ersoff</u>, 153 Cal. App. 4th 257,

273 (Cal. Ct. App. 2007). (Emphasis added, internal citations

omitted).

Thus, under the prevailing guidelines in California case law,

the quantum meruit value of the services performed by an attorney

who is terminated before recovery on a contingent fee case does

not end with a lodestar analysis. Instead, trial courts must look

beyond the hours worked to consider other factors, including the

results achieved. As the bankruptcy court observed, the dispute

in this case is comparable to a hypothetical case in which an

attorney worked ten hours on a case, was terminated, another

attorney worked ten hours and achieved a $100,000 settlement.

Should the attorneys split the fees 50/50, as Tishgart would

suggest, or should the court conduct an inquiry into whether the

-18-

first attorney had greater or lesser responsibility for achieving the results?

The requirement that a trial court look beyond the hours worked by the attorney to consider other factors, including the results achieved, appears in other California cases. In a case cited by Debtors, <u>Fricasse v. Brent</u>, 6 Cal.3d 784, 791 (1972), the California Supreme Court considered a situation where an attorney devoted considerable efforts to a case, was discharged, and the client achieved a settlement. The court awarded fees based on its findings of whether the attorney's work was principally responsible for the recovery.

In addition, in <u>Padilla v. McClellan</u>, 93 Cal. App.4th 1100, 1103 (Cal. Ct. App. 2001), the court considered a case dealing with a probate settlement, where an attorney worked on the case for a year, was discharged, and succeeded by another attorney who achieved the settlement. The court awarded fees to the attorneys based not only on respective hours spent on the case by the attorneys, but also based on the court's view of what the court perceived to be the results each attorney achieved.

Indeed, the California courts have explicitly rejected Debtors' argument that the quantum meruit standard is based strictly on hours worked:

> Because the hourly fee is the prevailing price structure in the legal profession, it is sometimes assumed that the quantum meruit standard applied to legal services includes nothing more than a reasonable hourly rate multiplied by the amount of time spent on the case. . . . However, this is an overly narrow view of the quantum meruit standard applied in the area of contingent fee agreement which, through no fault of either party, could not be performed.

<u>Cazares v. Saenz</u>, 208 Cal. App.3d 279, 286-87 (Cal. Ct. App.

-19-

1989).

In short, California case law does not support Debtors' argument that the value of Tishgart's services on the Fifteen Cases to be turned over to Trustee must be determined solely by reference to the number of hours Tishgart actually spent prepetition on the cases. Instead, state law requires a court to look beyond the hours spent and consider other factors, including the results Tishgart achieved.

The bankruptcy court found that Tishgart had provided little information on his post-petition activities in the relevant cases. "He has given the court scant basis for differentiating between his prepetition and postpetition work on the cases." Memorandum at 3.

The evidentiary record supports the bankruptcy court's observations. Through the various interrogatories and answers admitted into evidence, the court had information about each of the Fifteen Cases, including clients, dates, and amounts paid. Trustee's exhibits on eleven of the Fifteen Cases, with additional documentation obtained from Tishgart's files, were also admitted into evidence. Debtors provided no exhibits or documentary support for Tishgart's testimony.

Tishgart was examined under oath regarding the cases. He admitted that he kept no time records and any testimony he offered on the time he spent on each case was an estimate. Trial Tr. 15:12-19, February 14, 2012. His testimony was at times inconsistent. Regarding the Faust case, for example, in which the client received a $100,000 settlement, Tishgart originally denied that it had settled before the petition date. Trial Tr. 20:23.

-20-

When presented with documentary evidence from his stipulations in an earlier state court proceeding in the Faust case, he admitted that the settlement agreement had been reached and a motion to approve the settlement was submitted prepetition.  Trial Tr. 22:2-17.  The bankruptcy court could be justifiably skeptical of Tishgart's testimony that he only spent two hours prepetition on this case.

Regarding the San Miguel case, for which Tishgart received one of his largest fees of $47,500, Tishgart only claimed one hour of prepetition services.  Yet Tishgart's own files, obtained by Trustee and admitted into evidence, showed that Tishgart had interviewed his client, and drafted the complaint initiating the lawsuit on behalf of San Miguel over a year before the petition.  There had been at least one case management conference, Tishgart had submitted discovery responses, been involved in discovery disputes, and had selected mediators, all before the petition date.  Trial Tr. 35:ER at 130-59.  As to post-petition actions, Tishgart testified:

> RAY (attorney for Trustee): So what did you do after the petition date to earn that $47,500 in fees, specifically services you performed?
>
> TISHGART: Well, you asked me two questions.  The fees are earned as a result of a contingency.  I can't answer the question what I did after the petition date to work on the case.

Trial Tr. 36:13-17.

Tishgart answered questions about the other cases in a similar vein, discussing prepetition services with frequent inconsistencies, and post-petition services in general terms without specific reference to actual time spent.  The bankruptcy

-21-

court did not err in its conclusion that: "[Tishgart] has given the court scant basis for differentiating between his prepetition and postpetition work on the cases." Memorandum at 3.

What is certain, as observed by the bankruptcy court, was that Tishgart had been deemed to admit that he performed little or no services post-petition on the Fifteen Cases. Thus, the court could reasonably infer that whatever services Tishgart performed prepetition were critical to the results achieved, and to the contingent fee payments made, and that the prepetition services were of more value than the "little or no services" performed after the bankruptcy filing.

In sum, absent more evidentiary support for Debtors' position, the bankruptcy court would not have erred if it had concluded that it was justified in "awarding almost all of the fees in question to [Trustee]." Memorandum at 3. As a result, Tishgart is not prejudiced because the court awarded less than that amount to Trustee.

But the court was also fully justified in awarding half the fees to Tishgart. The court noted in its memorandum that it had reviewed the evidence and documentation on the cases and was not relying simply on the deemed admissions.

> In cases commenced well before the bankruptcy, most of the work was prepetition. In cases commenced nearer to the bankruptcy, most of the work was postpetition, notwithstanding Tishgart's deemed admission to the contrary. They pretty much offset each other, so a 50-50 split seems fair. The court notes that Tishgart did not keep time records, thereby making it difficult to divine a fair split more precisely.

Memorandum at 4 n.2.

The bankruptcy court did not err in deciding that Tishgart

-22-

must turn over $69,837.90 of the fees paid to him post-petition to Trustee.[8]

**CONCLUSION**

We AFFIRM the judgment of the bankruptcy court.

---

[8] Debtors also complain that the bankruptcy court failed to enter adequate findings of fact pursuant to Civil Rule 52/ Rule 7052. But Civil Rule 52(a)(1) provides that the trial court's findings "may appear in an opinion or a memorandum of decision filed by the court ," and the bankruptcy court's findings were specifically presented in the Memorandum.

-23-